IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUENTIN SALMOND, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| NATHAN WILLIAMS *et al.*, *Defendants* | : : | No. 23-3806 |

## MEMORANDUM

PRATTER, J.                                        NOVEMBER 8, 2023

Plaintiff Quentin Salmond, a prisoner currently incarcerated at SCI-Fayette, filed this civil action pursuant to 42 U.S.C. § 1983. Mr. Salmond named the Philadelphia District Attorney's Office, the Philadelphia Police Department, and a former Philadelphia Police Officer, Nathan Williams as defendants. The crux of Mr. Salmond's claims is that his constitutional rights have been violated by Defendants' failure to produce allegedly exculpatory evidence from his criminal trial; namely, Mr. Salmond's phone records, evidence of a witness's plea deal, and documentation of Officer Williams' police misconduct. Mr. Salmond has also filed a Motion to Proceed *In Forma Pauperis* and a Motion for Appointment of Counsel. For the following reasons, the Court will grant Mr. Salmond leave to proceed *in forma pauperis,* dismiss his Complaint, and deny his Motion for Appointment of Counsel.

### BACGKROUND[1]

On March 12, 2014, a Philadelphia Court of Common Pleas jury convicted Mr. Salmond of third-degree murder and conspiracy. *See Commonwealth v. Salmond*, No. 3037 EDA 2022, 2023

---

[1]  The following facts are taken from the allegations of the Complaint, attached exhibits, and the public record.

1

WL 5447700, at *2 (Pa. Super. Ct. Aug. 24, 2023). The public record provides the following background to Mr. Salmond's conviction, which puts his current claims in context:

> On April 12, 2008, at about 12:30 p.m., Joan Hill was working at an insurance office located at 5637 Chew Avenue when she saw a blue Lincoln town car parked with the engine running on Woodlawn Avenue. A man, later identified as [Mr. Salmond], dressed in women's Muslim clothing exited the vehicle. Hill believed the man was going to rob Skyline Restaurant, located around the corner, so she called 9-1-1 and gave the license plate number of the vehicle.
>
> At around noon that day, Kerron Denmark and Kenneth Wiggins went to Skyline Restaurant and Wiggins ordered food. Immediately after they left the restaurant with Wiggins carrying his food, a man approached them asking them for marijuana. As Denmark and Wiggins were walking down the street someone yelled "don't' f'ing move." Denmark heard gunshots and ran away.
>
> On April 12, 2008, at 12:44 p.m., while on routine patrol, Police Officer Christopher Mulderrig was flagged down by a man on the street and told there had been a shooting about two blocks away. When Officer Mulderrig arrived at 5643 Chew Avenue, he observed a male, later identified as Wiggins, lying in the street with a gunshot wound to his chest. Wiggins subsequently died from this gunshot to his chest.
>
> After the murder, Detective Thorsten Lucke recovered surveillance video from Skyline Restaurant. The surveillance video showed Wiggins and Kerron Denmark enter Skyline Restaurant. While the men are inside the restaurant, a vehicle drove by on Chew Avenue and turned left at the corner. Co-Defendant Jamil Banks and [Mr. Salmond], wearing women's Muslim clothing, emerge from the area where the car had turned from Chew Avenue. [Mr. Salmond] and Banks walked towards Skyline Restaurant. [Mr. Salmond] stopped in an alley while Banks enters the restaurant. Banks buys a bottle of soda, leaves the restaurant, and stood with [Mr. Salmond] in the alley, out of sight of the camera. After Wiggins gets his food, he and Denmark left the restaurant and walked down the street. Banks followed closely behind Wiggins and Denmark while [Mr. Salmond] followed farther back. [Mr. Salmond] and Banks

confronted Wiggins and Denmark and Wiggins falls to the ground. Quickly thereafter everyone ran away.

*****

On April 14, 2008, at about 9:00 p.m., an unlicensed blue Lincoln town car was found on fire in the area of Tenth Street and Chew Avenue. Lieutenant Rodney Wright of the Philadelphia Fire Department determined that the vehicle was burned intentionally.

On April 15, 2008, Charles Hayward gave a statement to police. Hayward explained that in February he had sold the blue Lincoln town car that Hill had called in to 9-1-1 to Bernard Salmond, [Quentin Salmond's] brother. According to Hayward, about a week previously, Wiggins had robbed [Quentin Salmond] after they had been gambling.

On April 17, 2008, Richard Hack, a friend of Wiggins, gave a statement to police. Hack explained that two days before the murder, [Quentin Salmond], Wiggins, and himself were gambling. [Quentin Salmond] and Wiggins argued about gambling debt and then Wiggins choked [Quentin Salmond] and took $1,000 from him. For the next couple of nights, [Quentin Salmond] and his friends were in the area looking for Wiggins.

On January 13, 2010, Robert Bluefort told police about three weeks after the murder, [Quentin Salmond] confessed to him that he shot Wiggins. According to [Quentin Salmond], he had to shoot or be shot. Bernard Salmond told Bluefort that the police had questioned Hayward because the car that was used in the murder was in his name. Bluefort and Bernard Salmond then discussed burning the vehicle. Bernard Salmond stayed with Bluefort for about a month after the murder.

*****

*Id.* at *1–2.

Mr. Salmond was sentenced to an aggregate term of 25 to 50 years of imprisonment. *Id.* at *2. Mr. Salmond's judgment of sentence was affirmed and his initial attempt to obtain post-conviction relief was unsuccessful. *See Commonwealth. v. Salmond*, No. 2247 EDA 2014, 2015

3

WL 6663272 (Pa. Super. Ct. Oct. 30, 2015); *Commonwealth v. Salmond*, 722 EDA 2018, 2019 WL 290608 (Pa. Super. Ct. Jan. 23, 2019). On September 16, 2022, Mr. Salmond filed a second PCRA petition, claiming, *inter alia*, that the government withheld Mr. Salmond's phone records that demonstrated he was not at the scene of the crime at the relevant time and that Officer Williams' 2019 indictment called into question the detective's conduct in Mr. Salmond's case. *Commonwealth v. Salmond*, 2023 WL 5447700, at *5-*6. The Pennsylvania Superior Court affirmed the denial of Mr. Salmond's post-conviction petition, finding that Mr. Salmond failed to prove an underlying *Brady* violation because "there is no evidence that the Commonwealth obtained [Mr. Salmond's] phone records or that he exercised due diligence." *Id.* at *5. The Court also rejected Mr. Salmond's newly discovered evidence claim related to Officer Williams because Mr. Salmond "first learned about [Officer Williams'] indictment on February 25, 2020 [by his own admission] and did not file a PCRA petition within one year of when the claim could have been presented." *Id.* at *6.

Mr. Salmond next filed the instant civil rights action,[2] raising essentially the same arguments asserted in his second PCRA petition; namely, that the Defendants withheld exculpatory *Brady* material that would establish his actual innocence. Specifically, Mr. Salmond claims that Defendants denied him "exculpatory evidence"—his phone records, plea deals with Bluefort, and

---

[2] Mr. Salmond's Complaint describes his attempts to obtain evidence from the Philadelphia Police Department and Philadelphia District Attorney's Office through the Pennsylvania Right-to-Know Law ("RTKL"). A violation of the RTKL does not form the basis of a cognizable § 1983 claim. *See Dacenzo v. Crake*, No. 3:10-cv-1776, 2012 WL 3561021, at *4 (M.D. Pa. Aug. 16, 2012). "Otherwise many state law causes of action would be transmuted into § 1983 actions." *See Noonan v. Kane*, 504 F. Supp. 3d 387, 411 (E.D. Pa. 2020), *aff'd*, No. 20-3610, 2022 WL 2702153 (3d Cir. July 12, 2022).

Moreover, to the extent Mr. Salmond challenges Defendants' failure to provide public records requested pursuant to the state RTKL, Mr. Salmond must bring this challenge through the procedures outlined in the RTKL itself. *See* 65 P.S. §§ 67.1101-67.1310; *see Miller v. Nelling*, No. 22-3329, 2023 WL 2743564, at *6 (E.D. Pa. Mar. 31, 2023) (holding that state courts provide the exclusive forum for litigating under the RTKL) (citations omitted). Accordingly, to the extent Mr. Salmond is attempting to raise any claims based on the RTKL, those claims must be dismissed.

the police misconduct of Defendant Williams—that establish his "actual innocence." As a result of Defendants' actions, Mr. Salmond seeks injunctive relief and monetary damages.[3]

## LEGAL STANDARD

The Court grants Mr. Salmond leave to proceed *in forma pauperis* because it appears that he does not have the ability to pre-pay the fees to commence this case.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

"At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015) (cleaned up)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Mr. Salmond is proceeding *pro se*, the Court construes his allegations liberally.

---

[3] Mr. Salmond also asks the Court to "[d]eclare that Defendants [] indeed withheld exculpatory evidence from the plaintiff." This type of declaratory relief is unavailable to adjudicate past conduct. *See Corliss v. O' Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."); *Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *4 (E.D. Pa. May 12, 2023).

[4] Because Mr. Salmond is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

*Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## DISCUSSION

Mr. Salmond seeks monetary and injunctive relief for Defendants' alleged failure to produce what he has identified as exculpatory evidence. That evidence includes Mr. Salmond's 2008 phone records, a plea deal with witness Mr. Bluefort, and documentation of police misconduct committed by Defendant Officer Williams.[5] According to Mr. Salmond, Defendants' failure to provide him with the requested evidence violates his constitutional rights pursuant to 42 U.S.C. § 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). However, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter

---

[5] It appears that Mr. Salmond actually received some materials related to Officer Williams' arrest. *See* Compl. at 11 ("The Philadelphia District Attorney's Office has since provided the plaintiff with Nathan Williams['] criminal charges, the warrant that was furnished for his arrest and phone records of the police officer . . . ."). In addition, based on portions of the August 14, 2012 transcript from the underlying criminal proceeding provided by Mr. Salmond, it does not appear that there was a plea agreement between the Government and Robert Bluefort. *See id.* at 33.

6

the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."). To the contrary, claims seeking post-conviction access to evidence "which may prove exculpatory, inculpatory, or inconclusive" are not barred by this principle because success on the prisoner's claim does not necessarily imply the invalidity of an intact conviction. *Skinner v. Switzer*, 562 U.S. 521, 525 (2011).

The substance of Mr. Salmond's claims rests squarely on an allegation that he is entitled to certain evidence because it is "exculpatory" and that it was not disclosed to him, but should have been, under *Brady v. Maryland*, 373 U.S. 83 (1963). "Unlike [postconviction] testing [of evidence], which may yield exculpatory, incriminating, or inconclusive results, a *Brady* claim, when successful postconviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment." *Skinner*, 562 U.S. at 536 ("*Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."). The entirety of Mr. Salmond's Complaint focuses on the Defendants' alleged withholding of *Brady* material and/or exculpatory evidence that would establish his actual innocence of the crime for which he was convicted. Accordingly, Mr. Salmond's claims are barred by *Heck*.

## CONCLUSION

For the foregoing reasons, the Court dismisses Mr. Salmond's Complaint for failure to state a claim without prejudice as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Mr. Salmond may reassert his *Heck* barred claims only in the event his underlying sentence is reversed, vacated, or

7

otherwise invalidated.[6] He may not file an amended complaint in this case because amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should be generally be granted "unless amendment would be inequitable or futile."). Mr. Salmond's Motion for Appointment of Counsel is denied in light of the dismissal of this case. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).

BY THE COURT:

_____
GENE E.K. PRATTER
United States District Judge

---

[6] To the extent Mr. Salmond seeks to challenge the constitutionality of his state convictions in federal court, he is limited to filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).